[Cite as *Huntsman v. Aultman Hosp.*, 2011-Ohio-1208.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RUTH HUNTSMAN,<br>ADMINISTRATRIX OF THE<br>ESTATE OF AURELIA HUNTSMAN | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| Plaintiff-Appellant/<br>Cross-Appellee | |
| -vs- | |
| | Case No. 2010CA00211 |
| AULTMAN HOSPITAL | |
| Defendant-Appellee/<br>Cross-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas,
Case No. 2002CV03227

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     March 14, 2011

APPEARANCES:

For Plaintiff-Appellant

TIMOTHY H. HANNA
388 South Main Street
Suite 402
Akron, OH 44311

For Defendant-Appellee

RICHARD S. MILLIGAN
PHILIP E. HOWES
PAUL J. PUSATERI
4518 Fulton Drive, NW
P.O. Box 35548
Canton, OH 44735-5548

*Farmer, J.*

{¶1} On June 24, 1999, Aurelia Huntsman underwent surgery to repair a hernia. Her surgery was performed by Sajid Chughtai, M.D. at Aultman Hospital, appellee herein. Ms. Hunstman died the next day.

{¶2} On December 15, 2000, appellant, Ruth Huntsman, Administratrix of the Estate of Aurelia Huntsman, filed a complaint against appellee, alleging a claim for negligent credentialing. Several other defendants and claims were included that are not pertinent to this appeal, including a medical malpractice claim against Dr. Chughtai. This complaint was voluntarily dismissed on September 24, 2001 and refiled on September 20, 2002. In 2009, appellant amended her complaint to include a claim for punitive damages against appellee.

{¶3} On February 22, 2010, appellee filed a motion for summary judgment on the punitive damages claim. On June 1, 2010, appellee filed a motion for summary judgment on the negligent credentialing claim. By judgment entry filed June 23, 2010, the trial court granted the motion as to the punitive damages claim. By judgment entry filed July 28, 2010, the trial court granted the motion as to the negligent credentialing claim.

{¶4} On August 5, 2010, appellant filed a notice of appeal and assigned the following errors:

I

{¶5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT, RUTH HUNTSMAN, AS ADMINISTRATRIX OF THE ESTATE OF AURELIA HUNTSMAN, BY GRANTING SUMMARY JUDGMENT IN FAVOR OF

DEFENDANT-APPELLEE, AULTMAN HOSPITAL, ON PLAINTIFF-APPELLANT'S NEGLIGENT CREDENTIALING CLAIM."

II

{¶6} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT, RUTH HUNTSMAN, AS ADMINISTRATRIX OF THE ESTATE OF AURELIA HUNTSMAN, BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, AULTMAN HOSPITAL, ON PLAINTIFF-APPELLANT'S PUNITIVE DAMAGE CLAIM."

III

{¶7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT, RUTH HUNTSMAN, AS ADMINISTRATRIX OF THE ESTATE OF AURELIA HUNTSMAN, BY NOT CONSIDERING EVIDENCE OF THE COMPLAINTS FILED IN MEDICAL NEGLIGENCE LAWSUITS FILED AGAINST DR. SAJID CHUGHTAI BEFORE DR. CHUGHTAI WAS REAPPOINTED TO THE MEDICAL STAFF ON JANUARY 27, 1999 IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, AULTMAN HOSPITAL, ON PLAINTIFF-APPELLANT'S NEGLIGENT CREDENTIALING CLAIM AND PUNITIVE DAMAGE CLAIM."

IV

{¶8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT, RUTH HUNTSMAN, AS ADMINISTRATRIX OF THE ESTATE OF AURELIA HUNTSMAN, BY NOT CONSIDERING EVIDENCE OF THE AMOUNTS THAT WERE PAID ON BEHALF OF DR. SAJID CHUGHTAI TO SETTLE MEDICAL NEGLIGENCE LAWSUITS BEFORE DR. CHUGHTAI WAS REAPPOINTED TO THE

MEDICAL STAFF ON JANUARY 27, 1999 IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, AULTMAN HOSPITAL, ON PLAINTIFF-APPELLANT'S NEGLIGENT CREDENTIALING CLAIM AND PUNITIVE DAMAGE CLAIM."

V

{¶9}  "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT, RUTH HUNTSMAN, AS ADMINISTRATRIX OF THE ESTATE OF AURELIA HUNTSMAN, BY NOT CONSIDERING EVIDENCE OF A NATIONAL PRACTITIONER DATA BANK REPORT CONCERNING DR. SAJID CHUGHTAI THAT WAS FILED WITH THE DATA BANK BEFORE DR. CHUGHTAI WAS REAPPOINTED TO THE MEDICAL STAFF ON JANUARY 27, 2999 IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, AULTMAN HOSPITAL, ON PLAINTIFF-APPELLANT'S NEGLIGENT CREDENTIALING CLAIM AND PUNITIVE DAMAGE CLAIM."

VI

{¶10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT, RUTH HUNTSMAN, AS ADMINISTRATRIX OF THE ESTATE OF AURELIA HUNTSMAN, BY NOT CONSIDERING EVIDENCE OF MATTERS AFFECTING DR. SAJID CHUGHTAI AFTER DR. CHUGHTAI WAS REAPPOINTED TO THE MEDICAL STAFF ON JANUARY 27, 1999 IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, AULTMAN HOSPITAL, ON PLAINTIFF-APPELLANT'S PUNITIVE DAMAGE CLAIM."

{¶11} On August 13, 2010, appellee filed a cross-appeal and assigned the following errors:

CROSS-ASSIGNMENT OF ERROR I

{¶12} "THE TRIAL COURT ERRED IN DENYING AULTMAN HOSPITAL'S MOTION FOR SUMMARY JUDGMENT THAT WAS BASED ON THE AGENCY LAW PRINCIPLE THAT A CLAIM FOR SECONDARY LIABILITY IS EXTINGUISHED WHEN THE PLAINTIFF SETTLES HER CLAIM AGAINST THE PRIMARILY LIABLE DEFENDANT."

CROSS-ASSIGNMENT OF ERROR II

{¶13} "THE TRIAL COURT ERRED IN ENTERING JUDGMENT ON A CASE TRIED AFTER IT WAS SETTLED."

CROSS-ASSIGNMENT OF ERROR III

{¶14} "THE COURT ERRED IN DENYING AULTMAN'S MOTION TO EXCLUDE EVIDENCE OF PRIOR LAWSUITS AND SETTLEMENTS."

{¶15} This matter is now before this court for consideration.

I, II, III, IV, V, VI

{¶16} Appellant claims the trial court erred in granting summary judgment to appellee. We disagree.

{¶17} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

{¶18} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be

litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."

{¶19} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35.

{¶20} Appellant argues the trial court erred in concluding that "R.C. 2305.25 does not allow for a cause of action for negligent credentialing against a hospital where a credentialing process was in place" and "a hospital cannot be held liable for 'sloppy' credentialing, so long as the proper credentialing process was followed." See, Judgment Entry filed July 28, 2010. Appellant argues the trial court's interpretation of R.C. 2305.25 is in error.

{¶21} The applicable statute is R.C. 2305.25, effective September 29, 1995, which stated the following in pertinent part:

{¶22} "No hospital, no state or local society, and no individual who is a member or employee of any of the following committees shall be liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of the committee:

{¶23} "(B) A board or committee of a hospital or long-term care facility or of a nonprofit health care corporation which is a member of the hospital or long-term care facility or of which the hospital or long-term care facility is a member reviewing professional qualifications or activities of the medical staff of the hospital or long-term care facility or applicants for admission to the medical staff."

{¶24} It is appellant's position that despite the apparent "cloak of immunity" granted by the 1995 statute, appellee is liable because it did not follow the procedures mandated by its own code of regulations and bylaws.  Appellant argues despite the appearance of appropriate peer review and credentialing, appellee violated its duty. Appellant argues appellee must of known of Dr. Chughtai's lack of competency because of its own participation in the settlement of some eleven medical malpractice claims; the brevity of the credentials committee's meeting of November 24, 1998 wherein Dr. Chughtai and some 454 other physicians were reviewed; the fact that the committee consisted of only one surgeon (an eye surgeon); and the testimony of a hospital administrator that the committee did not review the current competencies of the applicants, but rather made sure the physicians met certain standards.  Pryce depo. at 8-9.

{¶25} It is appellee's position despite those aforementioned claims, there was a medical staff coordinator, Jo Bortz (previously Tongret), who oversaw the re-credentialing process to "make sure all the pertinent requested information is attached" including number of surgeries and admissions.  Bortz depo. at 39.  This activity was governed by appellee's rules and regulations and bylaws.  Bortz depo. at 24; Bortz aff. at ¶4.  All the required and pertinent information was assembled by Ms. Bortz and given

to the chairs of the specific departments (in this case, general surgery). Bortz depo. at 39. Included in the packets were a peer review report, a quality assurance report, the physician's application, and data bank information. Bortz depo. at 83.

{¶26} Raymond Candage, Jr., M.D. was the chair of the General Surgery Department in 1998. Candage depo. at 3-4. He testified that after receiving the assembled packets, he met with a team consisting of a representative from the medical staff affairs office, someone from the quality performance office, and a hospital administrator to review and confer on the applications. Candage depo. at 7, 12. Dr. Candage admitted his review included the current competency of the applicants. Candage depo. at 43-44.

{¶27} After a chair of a department recommended re-credentialing, the recommendations were forwarded to the credentials committee. Bortz depo. at 40. Alexis Sayoc, M.D., chair of the credentials committee in 1998, testified Dr. Chughtai would have been recommended for re-credentialing by the chair of his department and the credentials committee would have verified that everything in the application packet was "filled up accurately and completely." Sayoc depo. at 8-9, 32. Thereafter, the recommendations would have been passed on to the medical policy board. Sayoc depo. at 9.

{¶28} Charles Kraus, M.D., a member of the medical policy board in 1999, testified the board reviewed the recommendations, and questions about specific issues would be discussed. Kraus depo. at 6, 36-37, 50. If there was an issue concerning a physician's competency, a discussion would be held. Krause depo. at 48-50. The matter then went to the board of trustees. Kraus depo. at 40-41. The board of trustees,

in compliance with the bylaws, considered the re-credentialing applications and approved the recommendations of the medical policy board. Bortz aff. at ¶4; Bortz depo. at 25-26, 42.

{¶29} It is within these facts that the applicability of appellee's immunity under R.C. 2305.25(B) will be reviewed.

{¶30} The case law that has evolved since the 1995 statute, as the trial court noted, is not specifically helpful to the ultimate question posed in this case.

{¶31} In *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, the Supreme Court of Ohio found R.C. 2305.25 provided a qualified immunity to those who submitted information to review committees; however, the issue addressed in *Jacobs* was a letter submitted to the credentials committee by Franks and whether such communication was privileged.

{¶32} *Albain v. Flower Hospital* (1990), 50 Ohio St.3d 251, overruled by *Clark v. Southview Hospital and Family Health Center,* 68 Ohio St.3d 435, 1994-Ohio-519, on other grounds, centered upon the creation of a hospital's duty of care that had granted staff privileges to a physician and the need to prove a causal connection between the granting of staff privileges and the foreseeability of potential harm. The *Albain* court at 258 specifically quoted the following language from *Johnson v. Misericordia Community Hospital* (1981), 99 Wis. 2d 708, 723, 301 N.W.2d 156:

{¶33} " '[T]he issue of whether***[the hospital] should be held to a duty of care in the granting of medical staff privileges depends upon whether it is foreseeable that a hospital's failure to properly investigate and verify the accuracy of an applicant's statements dealing with his training, experience and qualifications as well as to weigh and pass judgment on the applicant would present an unreasonable risk of harm to its

patients.   The failure of a hospital to scrutinize the credentials of its medical staff applicants could foreseeably result in the appointment of unqualified physicians and surgeons to its staff.   Thus, the granting of staff privileges to these doctors would undoubtedly create an unreasonable risk of harm or injury to their patients.   Therefore, the failure to investigate a medical staff applicant's qualifications for the privileges requested gives rise to a foreseeable risk of unreasonable harm and\*\*\*a hospital has a duty to exercise due care in the selection of its medical staff.' "

{¶34}   In *Browning v. Burt,* 66 Ohio St.3d 544, 562, 1993-Ohio-178, Justice Douglas seized upon language in R.C. 2305.25, "[n]othing in this section shall relieve any individual or hospital from liability arising from treatment of a patient," to find that there was no "blanket immunity" for a hospital:

{¶35}   "The purposes of R.C. 2305.25 are clear.   The statute extends limited protection to those who provide information to certain review boards and committees to encourage the free flow of information without threat of reprisal in the form of civil liability.   See, generally, *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 113, 573 N.E.2d 609, 612.   The statute also seeks to protect those serving on committees and committee employees for the obvious reason that it could be difficult to staff a committee absent such protections.   However, the cases at bar do not involve a situation where SEMC has been either the provider of information to a committee (see, *e.g.,* R.C. 1742.141), or the participant on a committee.   It is clear to us that R.C. 2305.25 does not provide blanket immunity to a hospital for negligence in granting and/or continuing staff privileges of an incompetent physician."

{¶36} The *Browning* case was issue specific as to whether the negligent credentialing claim was a medical claim and the applicable statute of limitations. We note the language from R.C. 2305.25 relied upon by Justice Douglas referred to non-credentialing claims.

{¶37} The statute in this case is explicit and states "[n]o hospital***shall be liable" when the claimed action is a result of the hospital's qualification committee. The credentialing procedures, as explained and testified to by the witnesses, Ms. Bortz, Dr. Candage, Dr. Sayoc, and Dr. Kraus, fall within subsection (B) of the statute. It is unrefuted that there were regulated, specific credentialing procedures in place and they were followed in Dr. Chughtai's re-credentialing process. Once procedures are in place and followed, the statute shields the hospital from negative credentialing claims. Without regulated procedures or a review process, a hospital has no immunity.

{¶38} We find appellee established the existence of a regulated and formulated re-credentialing process for all of its physicians and took Dr. Chughtai through the process. As such, appellee's judgment to re-credential Dr. Chughtai cannot give rise to a damages claim.

{¶39} Assignments of Error I, II, III, IV, V, and VI are denied. Because the punitive damages claim is dependent upon the existence of compensatory damages, the arguments pertaining to punitive damages are moot.

CROSS-ASSIGNMENTS OF ERROR I, II, AND III

{¶40} Based upon our decision supra, the cross-assignments are moot.

{¶41} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Wise, J. concur.

_s/ Sheila G. Farmer_____

_s/ William B. Hoffman_____

s/ John W. Wise_____

JUDGES

SGF/sg 211

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| RUTH HUNTSMAN, ADMINISTRATRIX<br>OF THE ESTATE OF<br>AURELIA HUNTSMAN | : <br> : <br> : <br> : | |
| Plaintiff-Appellant/<br>Cross-Appellee | : <br> : <br> : | |
| -vs- | : <br> : | JUDGMENT ENTRY |
| AULTMAN HOSPITAL | : <br> : | |
| Defendant-Appellee/<br>Cross-Appellant | : <br> : | CASE NO. 2010CA00211 |


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.  Costs to appellant.


_s/ Sheila G. Farmer_____


_s/ William B. Hoffman_____


s/ John W. Wise_____

JUDGES